IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

THE AFFILIATI NETWORK, INC.

    Plaintiff and Counter-Defendant

Case No.: 1-15-cv-21982-KMW

v.

NORWICH ENTERPRISES, LLC

    Defendant and Counter-Plaintiff
_____/

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

COMES NOW Norwich Enterprises, LLC and files this Answer, Affirmative Defenses, and Counterclaim and would respectfully show this Court as follows:

**I.**

**ANSWER**

1.    Norwich Enterprises, LLC ("Norwich") is without knowledge of facts sufficient to either admit or deny the allegations contained in paragraph 1 of the Complaint filed by The Affiliati Network, Inc. (the "Complaint").

2.    Norwich admits the allegations contained in paragraph 2 of the Complaint.

3.    Norwich admits the allegations contained in paragraph 3 of the Complaint.

4.    Norwich admits the allegations contained in paragraph 4 of the Complaint.

5.    With respect to the allegations contained in paragraph 5 of the Complaint, Norwich admits only that it is subject to the personal jurisdiction of this Court, but denies it is in any way liable for breach of contract as alleged in this paragraph.

6. Norwich denies the allegations contained in paragraph 6 of the Complaint because they are nonsensical.

7. Norwich is without knowledge of facts sufficient to either admit or deny the allegations contained in paragraph 7 of the Complaint.

8. Norwich admits the allegations contained in paragraph 8 of the Complaint.

9. With respect to the allegations contained in paragraph 9 of the Complaint, Norwich admits only that the terms of the contract speak for themselves.

10. With respect to the allegations contained in paragraph 10 of the Complaint, Norwich admits only that the terms of the contract speak for themselves.

11. With respect to the allegations contained in paragraph 11 of the Complaint, Norwich admits only that the terms of the contract speak for themselves.

12. With respect to the allegations contained in paragraph 12 of the Complaint, Norwich admits only that the terms of the contract speak for themselves.

13. Norwich admits the allegations contained in paragraph 13 of the Complaint.

14. Norwich admits the allegations contained in paragraph 14 of the Complaint.

15. With respect to the allegations contained in paragraph 15 of the Complaint, Norwich admits only that the invoices were sent, but denies that any just amount is due and owing.

16. Norwich admits the allegations contained in paragraph 16 of the Complaint.

17. Norwich denies the allegations contained in paragraph 17 of the Complaint.

18. Norwich denies the allegations contained in paragraph 18 of the Complaint as stated.

19. Norwich denies the allegations contained in paragraph 19 of the Complaint.

20. Norwich denies the allegations contained in paragraph 20 of the Complaint.

21. With respect to the allegations contained in paragraph 21 of the Complaint, Norwich admits only that it stopped paying Affiliati, but denies that any just amount is due and owing.

22. Norwich denies the allegations contained in paragraph 22 of the Complaint.

23. Norwich denies the allegations contained in paragraph 23 of the Complaint.

24. With respect to the allegations contained in paragraph 24 of the Complaint, Norwich admits that it has refused to pay the amounts claimed by Affiliati, but denies that any just amount is due and owing.

25. Norwich denies the allegations contained in paragraph 25 of the Complaint.

26. Paragraph 26 of the Complaint does not contain any allegations of fact for which either an admission or denial is required.

27. Norwich admits the allegations contained in paragraph 27 of the Complaint.

28. Norwich denies the allegations contained in paragraph 28 of the Complaint.

29. Norwich denies the allegations contained in paragraph 29 of the Complaint.

30. Norwich denies the allegations contained in paragraph 30 of the Complaint.

31. Paragraph 31 of the Complaint does not contain any allegations of fact for which either an admission or denial is required.

32. Paragraph 32 of the Complaint does not contain any allegations of fact for which either an admission or denial is required.

33. Norwich denies the allegations contained in paragraph 33 of the Complaint.

34. Paragraph 34 of the Complaint does not contain any allegations of fact for which either an admission or denial is required.

35. Norwich denies the allegations contained in paragraph 35 of the Complaint.

36. Norwich denies the allegations contained in paragraph 36 of the Complaint.

37. Norwich denies the allegations contained in paragraph 37 of the Complaint.

38. Norwich denies the allegations contained in paragraph 38 of the Complaint.

## II.

## AFFIRMATIVE DEFENSES

39. As affirmative defenses, Norwich pleads prior material breach, lack of authority, offset and fraud.

## III.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

**A.  Parties**

40. Counter-Plaintiff Norwich Enterprises, LLC ("Norwich") is a limited liability company organized under the laws of the State of Delaware.

41. Counter-Defendant The Affiliati Network, Inc. ("Affiliati") is a corporation organized and existing under the laws of the State of Florida and has already appeared in this action.

**B.  Jurisdiction and Venue**

42. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1367. Venue is proper with this Court pursuant to 28 U.S.C. §1391.

**C.  Factual Background**

43. In early 2015, Norwich's principal had discussions with Affiliati's principal concerning services that Affiliati could provide in order to assist with internet marketing. Norwich discussed the marketing of two products, Pure Garcinia Elite and Pure Body Elite, with Affiliati. Pure Garcinia Elite is a weight loss supplement that is designed to help suppress a consumer's appetite, and Pure Body Elite is a colon cleanse that is used to help clear out a consumers intestines for better processing of nutrients in the body.

44.     On or about January 27, 2015, Mr. Steve Van Shouwen, an independent contractor who worked on behalf of Norwich, signed The Affiliati Network Affiliate Marketing Agreement (the "Agreement") and a document entitled The Affiliati Network Insertion Order Cover Page (the "Insertion Order").  While Norwich authorized Mr. Van Shouwen to work with Affiliati to oversee certain aspects of its operations, it did not authorize him to execute the Agreement or the Insertion Order.  Moreover, Norwich did not learn of the existence of the Agreement or the Insertion Order until after serious problems arose with regards to Affiliati's services.  Further, Affiliati knew that Mr. Shouwen was not an officer of Norwich.  While Norwich agreed to use Affiliati to assist in the internet marketing, Norwich believed it was operating under an oral contract, and had no knowledge that Mr. Van Shouwen had executed contracts, purportedly on its behalf.

45.     Under the agreement reached between the parties, Norwich was to pay Affiliati $45 for an approved sale of a unit of Pure Garcinia Elite and $44 for an approved sale of a unit of Pure Body Elite.  Marketing traffic would be sent via social media websites including Facebook, as well as search engines and display banners on other websites.

46.     Under the arrangement between the parties, Affiliati was responsible for paying for advertising spots online. Affiliati would make a profit by paying less for the marketing traffic than it received in marketing commission. By way of example, if an Affiliati partner paid $50 for advertising on a website that generated 100 "clicks" to the sales page which in turn generated sales resulting in $100 in commission, the Affiliati partner would have made a $50 profit on that particular internet traffic.

47.     Importantly, Norwich instructed Affiliati to include no incentivizing in the marketing.  Incentivized marketing involves either offering the consumer a gift or similar incentive to purchase the product or to offer the product as a gift or similar incentive to perform

5

any other requested action. An example of an incentivized marketing would be to offer a free bottle of Pure Body Elite if the consumer would fill out a survey. Affiliati agreed to the prohibition on incentivizing, which was included on the Insertion Order.

48.     Norwich marketed its Pure Garcinia Elite and Pure Body Elite products under what is known as "trial continuity offers." The consumer would be offered the product for the essentially the cost of shipping for an initial 14 day trial period, after which time the consumer would be shipped additional product and billed for the full product price. The consumer could terminate the shipments at any time, and Norwich honored requests for returns.

49.     Norwich, however, paid Affiliati the full commission on these initial offers. While, there was certainly a risk of loss should the consumer decide not to continue using the product, Norwich had confidence in its products and thus agreed to pay Affiliati commissions even on initial sales generated by the trial continuity offers.

50.     After approximately four weeks, suspicions arose with Norwich due to low "conversions" during the first billing period. After approximately eight weeks, Norwich noticed that an unusually high number of those who had accepted during the first billing cycle were canceling, charging back, contacting customer service and/or refusing shipments. Further, Norwich's investigations determined that the rate of undeliverable addresses and returns far exceeded historical amounts. In addition, the merchant banks themselves began notifying Norwich of excessive charge-backs. Moreover, and more concerning, some customers stated that they were offered a gift card in exchange for trying the product and others stated that they were offered the product as a gift for participating in an online survey. Thus, the consumers were misled into believing that they would receive free product for simply paying shipping and handling costs. Because of the misleading statements by Affiliati, the consumers likely did not read the terms and conditions of the product sales page which stated that they would be billed

after their trial period of 14 days and would be automatically receive new product every 30 days thereafter for the full billing price.

51. Even more concerning, a number of consumers contacted their bank in regards to the automatic charges, accusing Norwich – and not Affiliati – of misleading them into purchasing our products. Merchant backs typically allow a 1% to 3% rate of tolerance for chargebacks. The current average for sales generated through Affiliati currently exceeds 5%, with some Affiliati partners with chargeback rates of up to 17%. These unacceptable chargeback rates led to merchant processors shutting off Norwich's ability to process credit card rebilling. Further, as a result of the high chargeback rates, these merchant processors also held funds of Norwich to offset against future charge backs.

52. At first, Norwich did not understand the source of the problems. Subsequent investigations have determined that approximately 5% of the sales generated through Affiliati resulted from gift offers to participate in an online survey – a type of incentivize marketing specifically prohibited. Further investigations using actual customer service calls and databases screened against known credit card fraud and/or databases of purchasers who had bought a free trial within 60 days indicate that 20% of the sales generated by Affiliati were improper. In this industry, 3% would be a cause for alarm. Further, Norwich has determined that Affiliati has hidden self-generated incentivized traffic with various of its sub-affiliates, using its internal servers to generate fraudulent traffic. Moreover, in conversations with other partner networks, Affiliati's principal has admitted to losing five clients in the past due to fraudulent traffic generated by Affiliati.

53. After Norwich determined that Affiliati's culpability in the improper marketing and sales generation, Norwich terminated its contractual relationship with Affiliati. By this point

in time, Norwich had already paid Affiliati $603,000. Further, due to the severe damage which Affiliati's conduct caused, Norwich refused to pay any additional amounts.

E.    **Causes of Action**

    1.     **Count One: Breach of Contract**

54.     Norwich re-alleges the factual allegations in the above paragraphs.

55.     Norwich and Affiliati entered into a valid and enforceable agreement in which Affiliati would generate internet sales and Norwich would pay commissions on each sale. Further, Affiliati agreed that it would not engage in any incentivized marketing.

56.     By the actions described above, Affiliati breached this agreement by engaging in deceptive marketing and engaging in incentivized marketing. Norwich suffered damages as a result of Affiliati's breaches in the amount of lost revenue and profits arising from the losses in sales due to the actions taken by Norwich's merchant processors, described above. Norwich requests this Court enter judgment against Affiliati in the amount of all damages suffered, in addition to pre- and post-judgment interest, expenses, costs, and attorney's fees.

    2.     **Count Two: Fraud**

57.     Norwich re-alleges the factual allegations in the above paragraphs.

58.     Affiliati made representations to Norwich concerning the services it would provide, namely that it would not engage in incentivized marketing and would market Norwich's product in a manner such that the consumer would understand the terms and conductions of the sale. As described above, contrary to Norwich's representations, it engaged in misleading marketing and incentivized marketing so as to maximize its commission revenues to the detriment of Norwich's business.

59.     These representations as to the nature of its services were material and false, and known to be false by Affiliati when made. Affiliati made the representations, with the intent that

Norwich act on them. Norwich relied on these representations and suffered injury as a result. Accordingly, Norwich requests judgment against Affiliati for all damages suffered as a result of Affiliati's fraud, as well as exemplary damages, and pre-and post-judgment interest as allowed by law.

**F.      Jury Demand**

60.     Norwich requests a trial by jury on all issues so triable.

WHEREFORE, Norwich Enterprises, LLC respectfully requests this Court deny all relief sought by The Affiliati Network, Inc., and upon final trial, grant judgment in favor of Norwich Enterprises, LLC and against The Affiliati Network, Inc. as requested above, and for such other and further relief as to which it may be justly entitled.

Respectfully submitted,

| | |
|---|---|
| */s/ Mark F. Raymond* | */s/ Ernest W. Leonard* |
| Mark F. Raymond, P.A. | Ernest W. Leonard, Esq. |
| Florida Bar No.: 373397 | State Bar No.:  12208750 |
| MRaymond@BroadandCassel.com | (*Pro Hac Vice Pending*) |
| Erin Kolmansberger, Esq. | eleonard@fflawoffice.com |
| Florida Bar No.:  094104 | Friedman & Feiger, L.L.P. |
| EKolmansberger@BroadandCassel.com | 5301 Spring Valley Road |
| Broad and Cassel | Suite 200 |
| 2 S. Biscayne Blvd | Dallas, Texas 75254 |
| One Biscayne Tower, 21st Floor | Telephone:     972.788.1400 |
| Miami, FL 33131 | Facsimile:     972.788.2667 |
| Telephone:    305.373.9425 | |
| Facsimile:    305.995.6384 | |

ATTORNEYS FOR NORWICH ENTERPRISES, LLC.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2015, I served the foregoing document upon all parties in the attached service list via CM/ECF.

 /s/ Mark F. Raymond
Mark F. Raymond, P.A.

Case No. 1:15-cv-21982-KMW

## SERVICE LIST
THE AFFILIATI NETWORK, INC. v. NORWICH ENTERPRISES, LLC
Case No.:  1-15-cv-21982-KMW

Ruben E. Socarras
Stephen J. Leary
MARSHALL SOCARRAS GRANT, P.L.
197 South Federal Highway, Suite 300
Boca Raton, Florida 33432
rsocarras@msglaw.com
sleary@msglaw.com
*Counsel for Plaintiff*